**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DERICK W. STEELE**
Deputy Public Defender
Kokomo, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

FILED

Mar 13 2012, 9:26 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

RONDELL WALKER, )
)
Appellant, )
)
vs. ) No. 34A02-1101-CR-612
)
STATE OF INDIANA, )
)
Appellee. )

APPEAL FROM THE HOWARD SUPERIOR COURT
The Honorable William C. Menges, Judge
Cause No. 34D01-0904-FA-358

**March 13, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, J.**

Rondell Walker ("Walker") appeals his termination from the Howard County Drug Court program and the sentence imposed on his underlying conviction for Class B felony possession of cocaine. Walker raises two issues for our review, which we revise and restate as follows:

I. Whether Walker was deprived of due process during his termination and sentencing hearings; and

II. Whether Walker's sentence was inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

**Facts and Procedural History**

On April 3, 2009, Sergeant Teresa Kelley of the Kokomo Police Department ("Sergeant Kelley") conducted a traffic stop on a vehicle being driven by Walker for failing to signal a lane change.[1] When Sergeant Kelley made contact with Walker, he told her his name was "Victor Walker" and gave her a false birth date and social security number. He also told her that he had a Wisconsin driver's license, but did not have it with him. Sergeant Kelley relayed the identifying information to dispatch and requested a check of Walker's driving records. A short time later, dispatch informed Sergeant Kelley that no driving records could be located for Victor Walker.

In the meantime, two additional officers had arrived on the scene to assist Sergeant Kelley. One of the officers conducted a pat down search of Walker's person and discovered a small plastic baggie of marijuana. Sergeant Kelley then asked Walker for his real name, and he eventually gave her his real name and identifying information. At

---

[1] At his guilty plea hearing, Walker stipulated to the facts presented in the probable cause affidavit and the attachments thereto. Tr. p. 8. Accordingly, the facts as recited above are taken from those documents.

that time, Walker was handcuffed and placed under arrest for false informing. Officers subsequently searched Walker's car, and a small plastic baggie containing about 7.3 grams of crack cocaine and another baggie containing six smaller baggies of marijuana were found under the driver's seat. Walker was then transported to the Howard County Criminal Justice Center for booking, where officers discovered thirteen additional individually wrapped baggies of crack cocaine, containing a total of 12 grams of the drug, in Walker's back pocket.

On April 6, 2009, Walker was charged as follows: Count I, Class A felony possession of cocaine; Count II, Class A felony dealing in cocaine; Count III, Class A misdemeanor possession of marijuana; Count IV, Class A misdemeanor dealing in marijuana; Count V, Class A misdemeanor false informing; and Count VI, Class C misdemeanor operating a vehicle without ever receiving a license. On October 20, 2009, Walker entered into a plea agreement whereby he agreed to plead guilty to Class B felony possession of cocaine as a lesser-included offense of Count I. Under the terms of the plea agreement, the State agreed to dismiss the remaining charges, and Walker's sentence was to be deferred so long as he participated in the Howard County Drug Court program. If Walker failed to successfully complete Drug Court, the matter was to be set for sentencing. The next day, the trial court accepted the plea agreement and referred Walker to Drug Court.

On January 12, 2011, without notice to Walker or a hearing on any claimed violation of the Drug Court rules, Walker's participation in the Drug Court program was terminated. On April 13, 2011, Walker filed a motion to set aside his termination from

the Drug Court program, arguing that the court had violated his due process rights by terminating him without notice or a hearing. After holding a hearing on the motion on April 15, 2011, the trial court set aside its previous order terminating Walker from the Drug Court program. On the same date, the trial court and set the matter for a hearing and the Drug Court coordinator filed a "Notice of Intent to Terminate From the Drug Court Program" alleging that Walker had been terminated from drug treatment on January 12, 2011.

On April 25, 2011, prior to the termination hearing, Walker filed a motion for change of judge alleging that the Drug Court judge, the Honorable William Menges, could not be neutral and detached because he had previously terminated Walker's participation in the Drug Court program without a hearing and because he was "too entwined in the Drug Court process[.]" Appellant's App. pp. 66-67. After holding a hearing on May 25, 2011, the trial court denied the motion for change of judge. Thereafter, the trial court proceeded with the termination hearing, at which Joe Wesche, Walker's therapist and drug treatment provider, testified that Walker had been terminated from treatment for missing group therapy sessions and because he "was no longer suitable for treatment and perhaps had never really been suitable for treatment[.]" Tr. p. 89. Additionally, Laura Rood ("Rood"), the Drug Court coordinator, testified, over Walker's objection, that Walker had previously been sanctioned on multiple occasions for violating various Drug Court rules. At the conclusion of the hearing, the trial court terminated Walker's participation in the Drug Court program. The trial court then held a sentencing hearing on June 15, 2011, and Walker was sentenced to an executed term of

4

twenty years in the Department of Correction on the underlying Class B felony possession of cocaine conviction. Walker now appeals.

## I. Due Process

Walker argues that his due process rights were violated when he was terminated from the Drug Court program. In Gosha v. State, this court concluded a participant in a Drug Court program is entitled to the same due process rights as an individual on probation. 931 N.E.2d 432, 433-34 (Ind. Ct. App. 2010). Accordingly, before an individual's participation in a Drug Court program may be terminated, he is entitled to (1) written notice of the claimed violations, (2) disclosure of the evidence against him, (3) an opportunity to be heard and present evidence, (4) the opportunity to confront and cross-examine witnesses, and (5) a neutral and detached hearing body. Id. at 435. On appeal, Walker argues that his due process rights were violated because he did not receive sufficient written notice of the allegations against him, and because he was denied a neutral and detached hearing body.

Walker argues that the "Notice of Intent to Terminate From the Drug Court Program" filed by the Drug Court coordinator was too vague to sufficiently apprise him of the claimed violation. We disagree. The notice provided as follows:

> Notice is hereby given of intent to terminate Rondell Walker from the Howard County Adult Drug Court Program for failure to comply with the Drug Court Program rules as follows:
> The Defendant was terminated from treatment on January 12, 2011.

Appellant's App. p. 65. This notice was sufficient to apprise Walker of the claimed violation, i.e. that he had been terminated from drug treatment. Walker does not dispute

5

that he was terminated from drug treatment or contend that being terminated from treatment was not a violation of the conditions of his participation in the Drug Court program sufficient to justify his termination. Rather, he appears to argue that his termination from the Drug Court Program was based upon other claimed violations of which he received no notice. Specifically, the State presented evidence at the termination hearing that Walker had previously been sanctioned on multiple occasions for violating Drug Court rules.

This court has held that participants in Drug Court are entitled to the same due process protections as individuals on probation. Gosha, 931 N.E.2d at 434-35. We have also held that a probationer's due process rights are violated when his probation is revoked based upon claimed violations of which the defendant has received no notice. Bussberg v. State, 827 N.E.2d 37, 44 (Ind. Ct. App. 2005), trans. denied. But even where a trial court has considered evidence of claimed violations of which a probationer had received no notice, we have concluded that the error was harmless where the probationer was found to have committed a violation of which he did receive notice, because proof of a single violation of the conditions of probation is sufficient to support the decision to revoke. Id. We believe the same holds true in the context of a trial court's decision to revoke an individual's participation in a Drug Court program. Accordingly, even if we assume that the court considered Walker's previous violations in terminating Walker from the Drug Court program, any error was harmless because Walker violated Drug Court rules by being terminated from treatment, a violation for which he did receive

6

notice, and proof of a single violation is sufficient to support the trial court's decision to terminate his participation in a Drug Court program.

Next, Walker argues that he was denied due process at his termination and sentencing hearings because Judge Menges was biased against him. As we explained above, this court has held that due process entitles a participant in a Drug Court program the right to a neutral and detached hearing body. Gosha, 931 N.E.2d at 434-35. Likewise, the sentencing process must satisfy the requirements of the due process clause. State v. McCormick, 397 N.E.2d 276, 277 (Ind. 1979). In Indiana, the law presumes that a judge is unbiased and unprejudiced. Smith v. State, 770 N.E.2d 818, 823 (Ind. 2002). To rebut this presumption, a defendant must establish from the judge's conduct actual bias or prejudice that placed the defendant in jeopardy. Id. "Such bias and prejudice exists only where there is an undisputed claim or where the judge expressed an opinion of the controversy over which the judge was presiding." Id. "'To assess whether the judge has crossed the barrier into impartiality, we examine both the judge's actions and demeanor.'" Perry v. State, 904 N.E.2d 302, 307-08 (Ind. Ct. App. 2090) (quoting Timberlake v. State, 690 N.E.2d 243, 256 (Ind. 1997)). Neither adverse rulings nor the imposition of the maximum possible sentence will support a claim of judicial bias. Tharpe v. State, 955 N.E.2d 836, 839 (Ind. Ct. App. 2011); Smith, 770 N.E.2d at 823.

With regard to his termination hearing, Walker argues that Judge Menges was "predisposed to terminate" his participation in the Drug Court program because: (1) Judge Menges initially terminated Walker's participation in the Drug Court program without notice or a hearing, although Judge Menges subsequently set that ruling aside, (2)

7

Judge Menges overruled Walker's objections to the admission of certain evidence at the termination hearing, and (3) Judge Menges denied Walker's motion for change of judge.[2] Appellant's Br. at 8-9. But adverse rulings, standing alone, are insufficient to support a claim of judicial bias. Perry, 904 N.E.2d at 308. We therefore cannot conclude that Walker has established that he was denied a neutral and detached hearing body with respect to his termination hearing.

With regard to his claim that he was denied a neutral and detached hearing body during the sentencing phase of the proceedings, Walker has identified a single statement by the trial court purportedly showing bias. Specifically, in sentencing Walker, the trial court stated that Walker "was in a position to do extremely well and started out doing well and in very short order started disregarding each and every thing we asked him to do." Tr. p. 170. However, Walker did not object to this comment, and his claim is therefore waived. See Flowers v. State, 738 N.E.2d 1051, 1061 (Ind. 2000) ("Where a defendant fails to object to comments a trial judge makes during trial, the issue is waived for review.").

Waiver notwithstanding, Walker's claim still fails. Judicial remarks that are critical or disapproving of, or even hostile to the parties ordinarily will not support a claim of bias or partiality unless they reveal an opinion that derives from extrajudicial sources or such a high degree of favoritism or antagonism as to make a fair judgment impossible. Sturgeon v. State, 719 N.E.2d 1173, 1182 (Ind. 1999). Although Judge

---

[2] On appeal, Walker does not challenge the trial court's denial of his motion for change of judge or its adverse evidentiary rulings.

Menges's statement could be understood to express displeasure with Walker for his continuous violation of Drug Court rules, it was based on information derived from judicial sources, i.e. Walker's participation in the Drug Court program, and it simply does not rise to the level of antagonism necessary to support a claim of judicial bias in sentencing. See, e.g., Smith, 770 N.E.2d at 823-24 (finding insufficient evidence of bias where the trial court referred to the crime as the act of "an evil, mean, depraved, perverted animal").

In a related argument, Walker contends that Judge Menges's statement that Walker "started disregarding each and every thing we asked him to do" was "contrary to the evidence presented to the trial court at either the sentencing or the termination hearing." Appellant's Br. at 8 (citing Bluck v. State, 716 N.E.2d 507, 512 (Ind. Ct. App. 1999) ("The sentencing process should be fair to each individual defendant, and a sentence based on materially untrue assumptions violates due process.")). We disagree.

Walker takes the trial court's statement far too literally. Although it is clear that Walker did not violate *every* condition of the Drug Court program, the judge's statement was simply a reference to the fact that Walker had violated many Drug Court rules, and this finding is clearly supported by the record, including Walker's own testimony. At the termination hearing, Rood testified that prior to the violation for which she sought to terminate Walker's participation in the Drug Court program, Walker was repeatedly sanctioned for violating Drug Court rules. Specifically, Walker was caught with a cell phone when he was not allowed to have one, he was kicked out of a homeless shelter at which he was staying, and he drove a vehicle after being prohibited from doing so.

9

Additionally, Walker did not attend support group meetings as ordered and then falsified documents stating that he had done so. Walker also engaged in sexual relationship with a woman with whom he had been prohibited from associating, and she ultimately became pregnant. Although Walker initially objected to the introduction of this evidence at his termination hearing, he later admitted that he had been sanctioned for violating Drug Court rules, and he indicated that he did not deny that he had committed those violations. Tr. p. 116. And at the sentencing hearing, at the request of Walker's counsel, the trial court took judicial notice of all evidence previously entered, including the Drug Court proceedings. Tr. p. 130. And Walker testified regarding most of these violations at the sentencing hearing. We therefore cannot conclude that the trial court's statement concerning Walker's violation of the Drug Court rules was unsupported by the record.[3] For all of these reasons, we cannot conclude that Walker is entitled to reversal based on any violation of his due process rights during his termination or sentencing hearings.

## II. Sentencing

Next, Walker challenges the appropriateness of his executed twenty-year sentence. Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court. Alvies v. State, 905 N.E.2d 57, 64 (Ind. Ct. App. 2009) (citing Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007),

---

[3] Walker also argues that his due process rights were violated because he did not have an opportunity to refute the trial court's finding concerning Walker's previous violation of Drug Court Rules. In Bluck, this court held that a "defendant is entitled to be sentenced only on the basis of accurate information, and the defendant retains the right to refute any inaccurate or improper information." 716 N.E.2d at 512. Walker had ample opportunity, both at his termination and sentencing hearings, to contest the evidence concerning his previous violations. Instead, Walker chose to admit his violations and attempt to explain them.

10

clarified on reh'g, 875 N.E.2d 218). This appellate authority is implemented through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Anglemyer, 868 N.E.2d at 491. However, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." Stewart v. State, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). The burden is on the defendant to persuade us that his sentence is inappropriate. Reid v. State, 876 N.E.2d 1114, 1116 (Ind. 2007).

Walker was convicted of Class B felony possession of cocaine, for which the sentence range is six to twenty years, with an advisory sentence of ten years. Ind. Code § 35-50-2-5 (2004). Walker received the maximum twenty-year sentence. Generally, the maximum possible sentence is most appropriate for the worst offenders. Buchanan v. State, 767 N.E.2d 967, 973 (Ind. 2002). This is not, however, an invitation to determine whether a worse offender could be imagined. Wells v. State, 904 N.E.2d 265, 274 (Ind. Ct. App. 2009), trans. denied. In stating that maximum sentences are ordinarily appropriate for the worst offenders, we refer generally to the class of offenses and offenders that warrant the maximum punishment, but this encompasses a considerable variety of offenses and offenders. Id. Thus, in our Appellate Rule 7(B) analysis, "[w]e concentrate less on comparing the facts of this case to others, whether real or

11

hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character." Id.

Considering the nature of the offense, we note that Walker was convicted of Class B felony possession of cocaine for being in possession of nearly twenty grams of the drug within 1,000 feet of a family housing complex.[4] See Ind. Code § 35-48-4-6 (2004). Although Walker only pleaded guilty to possession of cocaine, he was also in possession of marijuana at the time of the instant offense. Moreover, the circumstances of Walker's possession of these drugs are strongly indicative of dealing. Specifically, Walker was discovered in possession of multiple, small, individually wrapped packages of crack cocaine and marijuana. Indeed, Walker was originally charged with dealing in both cocaine and marijuana, but the State dismissed these charges as part of Walker's plea agreement.[5] We note further that Walker attempted to frustrate Sergeant Kelley's investigation by providing her with a false name and false identifying information.

---

[4] Possession of cocaine is generally a Class D felony, but it is enhanced to a Class B felony where the possession occurs within 1,000 feet of school property, a public park, a family housing complex, or a youth program center. Ind. Code § 35-48-4-6 (2004). The crime is further enhanced to a Class A felony if the person possesses at least three grams of the drug within 1,000 feet of one of these locations. Id. In Abbott v. State, our supreme court recently revised a defendant's maximum twenty-year sentence for possession of cocaine where the offense was elevated to a Class B felony because it took place within 1,000 feet of a school. ___ N.E.2d ___, 34S02-1202-CR-110 (February 22, 2012). In concluding that the maximum sentence was inappropriate in light of the nature of the offense, the court reasoned that "but for the police officer's choice of location in stopping the car in which Abbott was a passenger," his offense would not have been elevated to a Class B felony, and the maximum sentence he could have received would have been three years for his possession of less than three grams of cocaine. Slip. op. at 5. Although we note that Walker's offense would not have been elevated to a Class B felony but for Sergeant Kelley's choice of location in conducting the traffic stop, for the reasons set forth above, we believe the nature of the offense in this case is significantly more egregious than that at issue in Abbott, and we therefore do not find that precedent controlling.

[5] Although Walker only pleaded guilty to possession of cocaine, we cannot overlook the circumstances of his possession, which include indications that the substances had been packaged for individual sale.

We also conclude that Walker's character supports the imposition of the maximum sentence. Walker's criminal history includes two separate convictions for dealing in controlled substances. Walker has also been convicted of interfering with law enforcement, and he was twice arrested for domestic battery. See Cotto v. State, 829 N.E.2d 520, 526 (Ind. 2005) (holding that although a record of arrest, without more, does not establish that a defendant committed a criminal offense, it may be relevant to the assessment of a defendant's character in that it "may reveal that a defendant has not been deterred even after having been subject to the police authority of the State."). We also note that Walker has been unsuccessful when offered alternatives to incarceration. Walker's participation in the Drug Court program was terminated, and he has previously violated probation and parole. Tr. p. 118.

Walker's behavior while participating in the Drug Court program also reflects poorly on his character. Walker chose not to attend support group meetings as required, and then he falsified documents stating that he had done so. Additionally, Walker repeatedly ignored directives from Judge Menges and the rest of the Drug Court team. Specifically, he was told not to drive until he obtained an Indiana driver's license, but he chose to do so anyway. Walker also engaged in sexual relationship with a woman with whom he had been prohibited from associating, and she ultimately became pregnant. Additionally, during his incarceration pending his termination hearing, Walker was cited

for fighting with another inmate.[6]  All of this evidence reflects negatively on Walker's character.

Nevertheless, Walker argues that a maximum sentence is inappropriate because he suffers from drug addiction.  Specifically, Walker argues that his substance abuse "should weigh heavily in his favor because all facts show a person who is addicted to life altering substances and who needs to be rehabilitated rather than harshly punished."  Appellant's Br. at 6.  But Walker has already been offered the most comprehensive form of rehabilitative intervention available to offenders with substance abuse problems in Indiana—the opportunity to participate in Drug Court.  As part of the Drug Court program, Walker received substance abuse treatment, intensive judicial monitoring, and many other services.  Walker was given the chance to avoid prison time while working to overcome his addiction, but he squandered that opportunity by breaking the Drug Court rules.  It may be true that Walker suffers from drug addiction and could benefit from further treatment, but the judicial system simply has nothing left to offer him short of incarceration.  For all of these reasons, we cannot conclude that Walker's maximum, twenty-year executed sentence is inappropriate.

---

[6] At his sentencing hearing, Walker stated that he was acting in self-defense, but the conduct report issued by the Howard County Jail indicated that jail officials reviewed a videotape of the incident and determined that Walker was the aggressor.  Appellant's App. p. 70.  The report also indicates that when jail officials intervened and ordered Walker to stay on the ground, he got up and made another attempt to attack the inmate, and "a chemical agent had to be used to subdue [Walker]."  Id.

**Conclusion**

Walker is not entitled to reversal based on any violation of his due process rights during his termination or sentencing hearings, and Walker's twenty-year executed sentence is not inappropriate in light of the nature of the offense and his character.

Affirmed.

FRIEDLANDER, J., and RILEY, J., concur.