## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 17 2016, 8:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James A. Shoaf
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Catina M. Caudill,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

March 17, 2016

Court of Appeals Case No.
03A01-1508-CR-1228

Appeal from the Bartholomew
Superior Court

The Honorable Kathleen Tighe
Coriden, Judge

Trial Court Cause No.
03D02-1410-CM-4831 & 03D02-
1412-F6-5719

**Riley, Judge.**

## STATEMENT OF THE CASE

In this consolidated appeal, Appellant-Defendant, Catina M. Caudill (Caudill), challenges the trial court's revocation of her probation under Cause Nos. 03D02-1412-F6-5719 (F6-5719) and 03D02-1410-CM-4831 (CM-4831).

We affirm.

## ISSUE

Caudill raises one issue on appeal, which we restate as follows: Whether the trial court abused its discretion in ordering Caudill to serve the balance of her two previously suspended sentences.

## FACTS AND PROCEDURAL HISTORY

On March 17, 2015, Caudill pled guilty to possession of heroin, a Level 6 felony, under Cause No. F6-5719, and conversion, a Class A misdemeanor, under Cause No. CM-4831. Under Cause No. F6-5719, the trial court sentenced Caudill to two years of imprisonment, all suspended to probation, with the first year executed at community corrections. Under Cause No. CM-4831, the trial court sentenced Caudill to one year of imprisonment suspended to probation. The trial court ordered the sentences to run consecutively.

A month later, on April 17, 2015, the State filed petitions to revoke Caudill's probation in each case, alleging that Caudill had violated her probation by using methamphetamine. Caudill admitted to violating her probation at a hearing on June 1, 2015. The trial court ordered Caudill to complete the

Women Recovering with a Purpose (WRAP) program[1] and to remain in community corrections for the entire term of probation. However, while on probation and in the substance abuse program, Caudill provided Suboxone, a prescription medication, to two other participants in the program.

[6] On June 8, 2015, the State filed a Second Verified Petition to Revoke Probation in both cases, alleging that Caudill violated her probation by being unsuccessfully discharged from the WRAP program. On July 20, 2015, the trial court held a fact-finding hearing. At the hearing, the director of Residential Services for Bartholomew County Court Services, Rob Gaskill (Director Gaskill), testified that two individuals informed him that they used Suboxone, which was provided to them by Caudill. Caudill objected to Director Gaskill's testimony, arguing that it constituted hearsay, but the trial court overruled the objection. Caudill, in turn, claimed that she did not provide drugs to those individuals. At the conclusion of the hearing, the trial court found that Caudill had violated her probation, and ordered the remaining balance of her two previously suspended sentences to be executed, one-and-one-half years under Cause No. F6-5719 at the Department of Correction and one year under Cause No. CM-4831 at the Bartholomew County Jail, and to be served consecutively.

---

[1] The WRAP program is a female substance abuse program administered by community corrections in Bartholomew County, Indiana.

Caudill now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Probation is a favor granted by the State and is not a right to which a criminal defendant is entitled. *Sparks v. State,* 983 N.E.2d 221, 224 (Ind. Ct. App. 2013), *aff'd on reh'g.* The decision to revoke probation lies within the sound discretion of the trial court. *Id.* Thus, a trial court's decision to revoke probation and its subsequent sentencing decision are reviewed for an abuse of discretion. *Id.* A probation revocation proceeding is in the nature of a civil proceeding, and, therefore, the alleged violation need be established only by a preponderance of the evidence. *Jenkins v. State,* 956 N.E.2d at 146, 148 (Ind. Ct. App. 2011), *trans. denied.* Violation of a single condition is sufficient to revoke probation. *Id.* As with other sufficiency issues, we do not reweigh the evidence or judge the credibility of witnesses. *Id.* We look only to the evidence which supports the judgment and any reasonable inferences flowing therefrom. *Id.* If there is substantial evidence of probative value to support the trial court's decision that the probationer committed a violation, revocation of probation is appropriate. *Id.*

### II. *Analysis*

Caudill argues that she was denied her right to due process when her participation in the WRAP program was terminated without a written notice of the claimed violation. We have previously held in *Gosha v. State*, 931 N.E.2d

432, 435 (Ind. Ct. App. 2010), that a participant in a drug court program is entitled to due process, including an evidentiary hearing, with written notice of the claimed violations, disclosure of the evidence against her, an opportunity to be heard and to present evidence, and the right to confront and cross-examine witnesses.

[10]     However, it is well settled that a federal constitutional error is harmless if it is clear beyond a reasonable doubt that it did not affect the judgment. *Pope v. State*, 853 N.E.2d 970, 973 (Ind. Ct. App. 2006). In *Pope*, the defendant was placed in community corrections and agreed to, among other conditions, return to jail without going through the court if she violates any of the rules of community corrections. *Id*. at 971-72. The defendant later failed her urine analysis test, was arrested, and taken to jail. *Id*. at 972. When she appeared before the trial court, the defendant, who was in custody, indicated that she had not been informed why she had been arrested and was appearing in court. *Id*. She did not have an attorney representing her. *Id*. The trial court did not allow her to speak on her behalf, but told her that if she wanted to challenge the findings of community corrections, she would have to get an attorney and file a motion with the court. *Id*. The court issued an order committing her to jail. *Id*. On appeal, we held that the defendant was entitled to notice of an alleged violation and a hearing before her termination from a community corrections program. *Id*. at 973. We further held that the denial of those requirements of due process was not harmless error. *Id*. We observed that "Pope was

impeded in her defense" in that she "sought an independent drug test promptly after being informed of the allegations against her." *Id*.

> [B]ecause she received no notice of these allegations and was summarily returned to jail, [the defendant] was unable to get an independent drug screen until several weeks later. Obviously, the delay reduced the probative value of the drug screen, since the fact finder could conclude that the drugs had passed from her system naturally by the time the independent drug screen was conducted. Under these circumstances, we cannot say that the error was harmless beyond a reasonable doubt.

*Id*.

[11] In contrast, here, Caudill received sufficient notice of the nature of the alleged violation. On June 1, 2015, Caudill admitted to the use of methamphetamine while on probation and was placed in the substance abuse program. Two days later, on June 3, 2015, Caudill was "pulled out and [was] told that two girls had said that [Caudill] gave them drugs." (Transcript p. 6). She was then terminated from the program. On June 8, 2015, the State filed its Second Verified Petition to Revoke Probation stating that the reason for the request was her unsuccessful discharge from the substance abuse program. At this point, she had sufficient notice of the alleged violation and sufficient disclosure of the evidence against her. Further, at an initial hearing on June 9, 2015, Caudill indicated that she would hire counsel, and the trial court scheduled a fact-finding hearing for July 20, 2015. Therefore, unlike the defendant in *Pope*, Caudill was provided with a reasonable opportunity to investigate the

circumstances of her discharge from the WRAP program, consult with counsel, and develop her defense before the fact-finding hearing.

[12] On July 20, 2015, at the fact-finding hearing, Caudill appeared in person and with counsel. Director Gaskill was called to the stand and testified that "two other participants verbally [informed him] directly that they used Suboxone that they received from [Caudill] when she came into the program that day." (Tr. p. 3). Caudill objected based on hearsay, but the trial court properly overruled her objection. *See* Ind. Evidence Rule 101(d)(2) (the Rules of Evidence do not apply to probation proceedings). Director Gaskill testified that "all three of them [were jailed]" and Caudill was not deemed "appropriate for further placement in [the] program." (Tr. p. 3). Caudill's counsel cross-examined Director Gaskill and inquired whether Caudill failed her drug screen test. Director Gaskill replied that Caudill did not fail it, but her "instant drug screen [did] not test for [Suboxone]." (Tr. p. 5). When Caudill took the stand, she denied the allegations. Caudill neither called other witnesses to the stand nor provided any other evidence. Unlike *Pope*, where the defendant was not provided with an opportunity to develop her case, here, Caudill had the opportunity, yet all her defense amounted to was a general denial. Following Caudill's testimony, the trial court held that Caudill violated the terms of her probation.

[13] Under these circumstances, we conclude that it is clear beyond a reasonable doubt that the alleged denial of written notice and other elements of due process did not affect the trial court's determination that Caudill violated the terms of

her probation. Caudill violated her probation twice. The first time, she violated her probation when she used methamphetamine; and the second time, two days later, when she was discharged from the substance abuse program. In sum, because the outcome would not have been any different, the alleged error, if any, was harmless.

[14] Finally, while we agree with Caudill that the trial court should have issued a written statement containing the evidence relied on and reasons for revoking her probation, we find the trial court's failure to designate specific facts and the reasons for its decision to be harmless because the trial court's order was sufficiently supported by the record. *See, e.g., Hubbard v. State*, 683 N.E.2d 618, 622 (Ind. Ct. App. 1997) (the trial court's order of probation revocation and the hearing transcript were adequate for appellate review and, when examined together, satisfied the writing requirement).

[15] Accordingly, applying our standard of review, because probation is a matter of grace and because Caudill violated her probation twice, we hold that the trial court's decision to revoke her previously suspended sentence in light of her behavior was well within the trial court's sound discretion.

## CONCLUSION

[16] Based on the foregoing, we conclude that the trial court properly revoked Caudill's probation.

[17] Affirmed.

Najam, J. and May, J. concur